QUESTIONS: 1. Is the Okaloosa County School Board responsible to the dealer for payment of the excise tax which is imposed by s. 11, Ch. 74-336, Laws of Florida? 2. If the school board is liable for payment to the dealer, is the school board entitled to a refund in the same manner in which it receives other refunds for other gasoline taxes paid?
SUMMARY: The one-time excise tax imposed by s. 376.11(4), F.S., as amended by Ch. 74-336, Laws of Florida, is in the nature of a license tax imposed upon registrants for the privilege of operating terminal facilities and is measured by the volume of pollutants, including petroleum products, transferred over water to or from the registrant. The tax is an additional "cost of doing business" to the registrant operating a terminal facility from whom a dealer, distributor, or ultimate consumer purchases petroleum products. A registrant, in the normal course of business, may, if not constrained from doing so by any subsistent contract, adjust its delivery prices to its purchasers to account for its increased cost of doing business; however, the tax may not be "passed on" as such to any purchaser of the product from the registrant. Governmental purchasers, including the Okaloosa County School Board, are not entitled to exemption or immunity from the portion of the purchase price reflecting the excise tax paid by the registrant, nor are such purchasers entitled to any refund for that portion so paid. The Pollutant Spill Prevention and Control Act, Ch. 376, F.S., as amended by Ch. 74-336, Laws of Florida, was enacted by the Florida Legislature out of recognition that, inter alia, "the highest and best use of the seacoast of the state is as a source of public and private recreation," s. 376.021(1); that "the preservation of this use is a matter of the highest urgency and priority," s. 376.021(2); and that "the transfer of pollutants between vessels, between onshore facilities and vessels, between offshore facilities and vessels, and between terminal facilities within the jurisdiction of the state and state waters is a hazardous undertaking," s. 376.021(3)(a). Section 11 of Ch. 74-336, supra, amended s. 376.11, F.S., to establish the Florida Coastal Protection Trust Fund. The cost of the regulatory scheme of Ch. 376, F.S., is imposed upon those engaged in the activity of transferring pollutants, including petroleum products, over Florida waters in the form of an excise tax upon each registrant operating a terminal facility, the proceeds of which, along with other fees and charges, are credited to the trust fund, s. 376.11(2), as amended. Section 376.11(4), as amended, provides in pertinent part:
(4)(a) There is hereby levied, to be collected from and paid by each registrant, an excise tax upon each registrant for the privilege of operating a terminal facility and the handling of all pollutants covered by this chapter, the amount of which is to be determined by the department as measured by the volume in barrels of liquid pollutants transferred to or from the registrant. (b) The excise tax shall be two cents (2) per barrel transferred until the balance in the fund equals or exceeds thirty-five million dollars ($35,000,000.00). . . . * * * * * 4. . . . [T]he excise tax on each barrel of the pollutant shall be imposed only once at the first transfer of the specific pollutant. Each tax barrel of the specific pollutant shall only be considered once for the purpose of this excise tax. This excise tax shall be in addition to all other taxes imposed upon or paid by the registrant. See s. 376.031(7), (9), (11), and (17), F.S., as amended, for statutory definitions of the terms "pollutants," "terminal facility," "transfer," and "registrant." The excise tax imposed pursuant to the above-quoted statutes is, in effect, a license tax imposed on registrants for the privilege of operating terminal facilities within Florida. The excise tax imposed is directly related to one activity — the over-water transfer of pollutants. The tax is not related to activities of those who seek to import pollutants into Florida over land, thus leaving alternate means of importation. The amount of tax which is imposed is measured by the amount of pollutants involved in certain over-water transfers to or from the registrant. The tax is levied on the registrant — not on the pollutant itself. It is similar to the occupational license taxes authorized by Ch. 205, F.S., and is not in the nature of the "gas tax" imposed by ss. 206.41 or206.87, F.S., which is imposed on the sale or privilege of bringing the designated motor fuel into this state for use. Measuring the tax by the volume of pollutants transferred is an accurate gauge of the activity being taxed in that it is the volume of pollutants involved in over-water transfers which is directly related to the dangers which Ch. 376, F.S., seeks to guard against. Because of the nature of the subject excise tax, it is in reality an additional "cost of doing business" to the registrant operating a terminal facility from whom a dealer, distributor, or ultimate consumer purchases its petroleum products. Since the excise tax has become a part of the operating expense of the registrant, just as other regulatory license and permit fees such as occupational license taxes or motor vehicle license taxes, such registrant in the normal course of business may adjust, and by Ch. 376, F.S., as amended, is not restrained from adjusting, its delivery prices to its purchasers to account for its increased cost of doing business. However, as indicated by s. 376.11(4)(b)4., as amended, the tax imposed on the transfer of pollutants is imposed only once, at the first transfer thereof, and may not be "passed on" as such to any purchaser of the product from the registrant. Thus, there is no basis in Ch. 376, as amended, nor reason for separately stating the tax on the bills or invoices from the registrant to any purchaser, or on any bill or invoice from a distributor to a retailer or ultimate consumer. Compare s. 206.23, F.S., which requires distributors to separately state the gas tax which is imposed on the sale or privilege of bringing the designated motor fuel into this state for use pursuant to s. 206.41, F.S., on all invoices, and which permits certain purchasers to obtain refunds of the gas tax paid to their distributors, e.g., s. 206.31, F.S. Thus, the purchase price paid to dealers for petroleum products by the Okaloosa County School Board may include the increased cost or price paid by the dealer to the terminal facility operator or occasioned by the one-time tax imposed by s. 376.11, as amended, on the terminal facility operator, except for those deliveries and delivery prices fixed by the terms of any subsistent contract between the parties. However, since the subject excise tax is not imposed on the purchase by consumers of the petroleum product, the Okaloosa County School Board, or other governmental purchaser, is not entitled to any inherent exemption or immunity from the portion of the purchase price reflecting said excise tax. Nor is there any statutory authority for refunds to such governmental purchasers for any portion of the purchase price of pollutants which might reflect the excise tax. It might be noted that the State of Maine has an act very similar to Florida's, 38 M.R.S.A. ss. 541-557, which also imposes a license tax measured by the volume of petroleum products transferred over water, id. s. 551. The Supreme Judicial Court of Maine has upheld the validity of their statute and the tax imposed thereunder, Portland Pipe Line Corporation v. Environmental Improvement Commission, 307 A.2d 1 (Maine 1973), appeal dismissed for want of a substantial federal question,414 U.S. 1035 (1973).